USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _11/1/2024_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

CHOLO ABDI ABDULLAH,

                    Defendant.

20 Cr. 677 (AT)

**ORDER**

ANALISA TORRES, District Judge:

      The Government moves to admit certain statements of alleged co-conspirators of Defendant, Cholo Abdi Abdullah, under Federal Rule of Evidence 801(d)(2)(E). Gov't Mem., ECF No. 139; Def. Opp., ECF No. 140. As the Court explained in its ruling on the Government's motions *in limine*, the Court may admit co-conspirator statements "on a conditional basis, subject to the later submission of the necessary evidence" to establish that the statements are not hearsay. ECF No. 131 at 7 (quoting *United States v. Tracy*, 12 F.3d 1186, 1199 (2d Cir. 1993)). Specifically, the Government must demonstrate by a preponderance of the evidence that "a conspiracy existed, that the [D]efendant and [the] declarant[s] were members, and that the statements were made during the course of and in furtherance of the conspiracy." *Tracy*, 12 F.3d at 1199 (citing *United States v. Geaney*, 417 F.2d 1116, 1120 (2d Cir. 1969)). This order addresses whether the Government has made the requisite showing. Because the Court finds that it has, the co-conspirator statements are ADMITTED.

**BACKGROUND**

The Government alleges that, from 2016 to 2019, Abdullah participated in a scheme devised by Harakat al-Shabaab al-Mujahideen ("al Shabaab") to hijack a commercial airplane and crash it into a U.S. building. ECF No. 1 ¶¶ 1–2. This plan was allegedly part of a larger al Shabaab plot, known as "Operation Jerusalem Will Never Be Judaized," to retaliate against the United States for moving its embassy in Israel from Tel Aviv to Jerusalem. *See id.* ¶¶ 9–12. As relevant here, Count One of the indictment charges Abdullah with conspiracy to provide material support to a foreign terrorist organization, in violation of 18 U.S.C. § 2339B(a)(1), (d)(1)(C), (E), and (F). *Id.* ¶¶ 1–21. Count Three charges Abdullah with conspiracy to murder U.S. nationals, in violation of 18 U.S.C. § 2332(b). *Id.* ¶¶ 24–27. Count Four charges Abdullah with conspiracy to commit aircraft piracy, in violation of 49 U.S.C. § 46502. *Id.* ¶¶ 28–31. Count Five charges Abdullah with conspiracy to destroy aircraft, in violation of 18 U.S.C. § 32(a)(8). *Id.* ¶¶ 32–36. Lastly, Count Six charges Abdullah with conspiracy to commit acts of terrorism transcending national boundaries, in violation of 18 U.S.C. § 2332b(a)(2). *Id.* ¶¶ 37–39.

The Government has adduced substantial evidence of these alleged conspiracies. It has offered testimony that Abdullah admitted to joining al Shabaab and to coordinating with al Shabaab operatives, known to Abdullah as "Stella Grace" and "Brother," to obtain a commercial pilot's license. Tr. at 67:10–68:1, 68:17–22, 70:17–71:8. The Government has introduced evidence that Abdullah enrolled in a flight school in the Philippines, *see* Tr. at 81:15–83:22, GX1114–15, GX1122, researched how to hijack an airplane, GX363, GX371–72, GX714, and sought information and encouragement from his handler, who simultaneously coordinated with another al Shabaab member to undertake an attack on a hotel in Nairobi frequented by westerners, *see* GX292A. And it has offered further evidence, including expert testimony, Tr. at

190:11–198:12, electronic communications among apparent al Shabaab operatives, GX233–34, and videos produced by the organization itself, GX801A–B, to establish that these plots were part of a broader conspiracy to commit transnational acts of terrorism targeting Americans.

## LEGAL STANDARD

"Federal Rule of Evidence 801 provides that a statement is not hearsay if it is both offered against a party and is 'made by the party's co[-]conspirator during and in furtherance of the conspiracy.'" *United States v. Coplan*, 703 F.3d 46, 82 (2d Cir. 2012) (quoting Fed. R. Evid. 801(d)(2)(E)). To admit a statement under Rule 801(d)(2)(E), the Court must find "(a) that there was a conspiracy, (b) that its members included the declarant and the party against whom the statement is offered, and (c) that the statement was made during the course of and in furtherance of the conspiracy." *United States v. Alameh*, 341 F.3d 167, 176 (2d Cir. 2003) (citation omitted). "These are preliminary facts for the district court to determine under a 'preponderance of the evidence' standard." *Id.* (citing *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987)). The trial court "must view the evidence as a whole, rather than consider the individual pieces in isolation," *United States v. Cicale*, 691 F.2d 95, 103 (2d Cir. 1982) (citing *Geaney*, 417 F.2d at 1121), and it must consider "the contents of the alleged co[-]conspirator's statement itself," *United States v. Swinton*, No. 23-6118, 2024 WL 1564487, at *2 (2d Cir. Apr. 11, 2024) (cleaned up). "There must, however, also 'be some independent corroborating evidence of the defendant's participation in the conspiracy.'" *Id.* (quoting *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999)).

The first and second requirements—the existence of a conspiracy involving the declarant and the defendant—are met where "the evidence is sufficient to establish, by a preponderance of the evidence, that the alleged co[-]conspirators entered into a joint enterprise with consciousness

3

of its general nature and extent." *United States v. James*, 712 F.3d 79, 106 (2d Cir. 2013) (cleaned up). The Second Circuit has noted that "once a conspiracy has been proved to exist, the evidence needed to link [a] defendant with it (for purposes of a *Geaney* finding) need not be overwhelming." *Cicale*, 691 F.2d at 103 (cleaned up). Rather, "all that is required to meet the *Geaney* threshold is 'a showing of a likelihood of an illicit association between the declarant and the defendant.'" *Id.* (quoting *United States v. Alvarez-Porras*, 643 F.2d 54, 57 (2d Cir. 1981)). There is no requirement that the person to whom the statement is made is also a member of the conspiracy. *James*, 712 F.3d at 106. Nor is there a requirement that the co-conspirator declarant be identified by name. *United States v. Boothe*, 994 F.2d 63, 69 (2d Cir. 1993).

Third, a statement is "in furtherance of" a conspiracy if it is "designed to promote or facilitate achievement of the goals of that conspiracy." *United States v. Rivera*, 22 F.3d 430, 436 (2d Cir. 1994). The furtherance can be overt: for example, if the statement "prompt[s] the listener to respond in a way that facilitates the carrying out of criminal activity." *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1199 (2d Cir. 1989) (citation omitted). Or it may be subtler: for example, a statement can further a conspiracy by "providing information or reassurance to a co[-]conspirator, seeking assistance from a co[-]conspirator, or by communicating with a person who is not a member of the conspiracy in a way that is designed to help the co[-]conspirators to achieve the conspiracy's goals." *Rivera*, 22 F.3d at 436. A statement may also be made in furtherance of a conspiracy if "it informs a conspirator of the identity and activities of co[-]conspirators, or if it informs a co[-]conspirator as to the progress or status of the conspiracy." *United States v. Davis*, 687 F. App'x 75, 78 (2d Cir. 2017) (cleaned up) (citing *United States v. Rastelli*, 870 F.2d 822, 837 (2d Cir. 1989), and *United States v. Desena*, 260 F.3d 150, 158 (2d Cir. 2001)).

## DISCUSSION

The Government seeks to admit Facebook messages between "Stella Grace"[1] and additional al Shabaab operatives that were exchanged between July 2018 and January 2019 and which the Government claims were in furtherance of Operation Jerusalem Will Never Be Judaized. Many of the communications relate specifically to al Shabaab's January 2019 attack on the DusitD2 hotel and office complex in Nairobi, Kenya, which was allegedly part of the larger Jerusalem Will Never Be Judaized plot and resulted in around twenty-one deaths.

In the first set of messages, "Stella Grace" and an account with the username "Dallas Dala" appear to discuss the logistics of a terrorist plan that would target Americans and other westerners in Kenya. *E.g.*, GX233 ("We have not been able to be going around because of lack of fuel bt we have the targets somewhere well organized bt not Americans"); GX234 ("Which specific targets you have in naiv.? Amricns?"); *see also id.* ("Bro the last time we were together we asked you about a silencer pipe.is it easy to get it there").

In the second set of messages, "Stella Grace" and an account with the username "Roonie Coolman" discuss how to construct explosives. *E.g.*, GX243 ("Ia do you need any chemicals…eg like conc.nitric acid etc"); GX244 (a photograph of black gloves accompanied by the message, "Acid proof gloves I'm buy for as well"); *id.* (a photograph of a respirator and the message, "This is for covering the nose u can use it ia or give to the Bros who miX the mada").

In the third set of messages, "Stella Grace" and an account with the username "Falarti Aad Turtay" appear to plan the attack on the DusitD2 hotel. *E.g.*, GX293 ("The guards at the

---

[1] During trial, the Government offered unrebutted evidence linking the "Stella Grace" account to multiple other online accounts through shared machine cookies and IP addresses. See Gov't Mem. at 3–4 & n.2; GX1505 at 3. The Government has therefore established by a preponderance of the evidence that the co-conspirator operating the "Stella Grace" account also operated the "Chuki Nuru," "Adamu Chege," "Julianah Adams," "Korio Kiis," and "Elusive Router" accounts. *See* GX1505 at 3. For simplicity, the Court refers to the user of each of these accounts as "Stella Grace."

5

entrance one was armed"); GX294 ("How's if I add to the group an additional [man emoji] with vest? Can u get for him a good place that contains many goats so that he can start the game for u and secure good number for you ia?").

In the fourth and final set of messages, an account with the username "John Kingstone"[2] appears to provide "Stella Grace" with live updates on the progress of the DusitD2 attack. GX292A ("pics of chickens bodies are alreay on the social media…"); *id* (photographs of the DusitD2 gunmen); *id.* ("kuffars [*i.e.*, nonbelievers] are terrified"); *id.* ("total silence only dying chicken around"); *id.* (a photograph of dead bodies at the DusitD2 complex and the message, "this is how's the outside looks").

The Government has established by a preponderance of the evidence that all the proffered messages were sent by Abdullah's co-conspirators. As to the first requirement, the existence of a conspiracy, the Government elicited unchallenged testimony from expert witness Tricia Bacon, PhD, concerning the existence of Operation Jerusalem Will Never Be Judaized, an overarching al Shabaab mission to commit violence against westerners, and especially U.S. citizens. *See* Tr. at 190:11–198:12. Dr. Bacon testified that al Shabaab claimed credit for the attack on the DusitD2 hotel and complex under the banner of that operation, *id.* at 191:1–193:17, 198:7–12, and the Government corroborated Dr. Bacon's testimony with evidence of al Shabaab's own media and statements following the attack, *see* GX801A–B.

As to the second requirement, the Government has demonstrated by a preponderance of the evidence that the out-of-court statements were made by participants in Operation Jerusalem Will Never Be Judaized and that Abdullah was a co-conspirator. The messages belonging to the usernames "Falarti Aad Turtay" and "John Kingstone" clearly reflect that they were sent by one

---

[2] GX295 suggests that the co-conspirator operating the "Falarti Aad Turtay" account is the same co-conspirator operating the "John Kingstone" account. *See* Gov't Mem. at 4 n.2; GX295.

of the DusitD2 attackers. *See United States v. Gupta*, 747 F.3d 111, 123 (2d Cir. 2014) (noting that, "[i]n determining the existence and membership of the alleged conspiracy," the Court "must consider . . . the contents of the alleged co[-]conspirator's statement itself"). In lightly coded language, the attacker and "Stella Grace" discuss using weapons and killing people, *see* GX292A ("kuffars are advancing"); *id.* ("heavey fire xchange being heard again… they says\"); *id.* ("seeds running out"); the attacker even sends photographs of gunmen and dead bodies that he could not have accessed were he not at the scene, *see id*.

The context of the messages between "Stella Grace," "Dallas Dala," and "Roonie Coolman" also indicate that they are part of the same conspiracy. Special Agent Kevin Song testified that Abdullah identified "Stella Grace" as part of the al Shabaab conspiracy, Tr. at 68:17–22, 70:17–71:8, a fact that the messages between "Stella Grace" and the DusitD2 attacker confirm. "Dallas Dala," for his part, discusses American and British "targets" and a "silencer pipe" in his messages with "Stella Grace," suggesting that he also participated in the broader conspiracy. GX233–34. Although the messages belonging to "Roonie Coolman" are, on their face, less obviously related to this larger plot, their content—documenting the construction of explosives—and context—made to "Stella Grace," a high-level al Shabaab operative, in the months leading up to the DusitD2 attack—satisfy the Court that "Roonie Coolman" belonged to the common conspiracy.

As for Abdullah, Special Agent Song testified that Abdullah admitted to joining al Shabaab with a friend, Ali Salim, one of the DusitD2 attackers. Tr. at 50:20–51:15. The Government introduced evidence showing that Abdullah searched for videos of the DusitD2 attack immediately after it occurred. Tr. at 56:7–57:16, 59:15–60:1; GX375, GX377, GX712–13. And Special Agent Song further testified, and electronic communications corroborate, that

7

Abdullah admitted to coordinating his flight training with "Stella Grace," and with Stella Grace's encouragement, he researched possible American targets for an airplane hijacking, including targets in Atlanta. Tr. at 72:3–73:8.

Finally, the Court concludes that the Government has established by a preponderance of the evidence that the proffered statements were made in furtherance of the conspiracy. In his communications with the other co-conspirators, "Stella Grace" questions "Dallas Dala" about whether his "targets" are Americans, GX234, shows "Ronnie Coolman" what kind of respirator to use while mixing ingredients commonly used in explosives, GX244, and tells the DuistD2 attacker that the "lord is in ur side ia," GX292A. These statements "facilitate[] the carrying out of criminal activity," *Beech-Nut Nutrition Corp.*, 871 F.2d at 1199, and provide "information or reassurance" to a co-conspirator, *Rivera*, 22 F.3d at 436. Many of the other co-conspirators' statements also serve an informational purpose. *See Desena*, 260 F.3d at 158. For example, "Dallas Dala" messages "Stella Grace" that he has British "targets" but that he is "still trying to know where to get the amricns," GX234, "Ronnie Coolman" tells "Stella Grace" that he has procured acid-proof gloves and beakers, GX244, and the DusitD2 attacker keeps "Stella Grace" updated before and after he carries out a mass shooting, GX292A, GX294. Thus, the Court concludes that these statements were all made in furtherance of the Operation Jerusalem Will Never Be Judaized conspiracy.

## CONCLUSION

For the foregoing reasons, the Court determines that the Government has adduced sufficient evidence demonstrating that the proffered statements were made by co-conspirators during and in furtherance of a conspiracy of which Abdullah was a part. Therefore, they do not constitute hearsay, and are ADMITTED under Federal Rule of Evidence 801(d)(2)(E).

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 139 and 140.

SO ORDERED.

Dated: November 1, 2024
New York, New York

ANALISA TORRES
United States District Judge