UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

UNITED STATES OF AMERICA

        -against-

CHOLO ABDI ABDULLAH,

        Defendant.

------------------------------------------------------------------------x

Docket No.

20 Cr. 677 (AT)

# SENTENCING SUBMISSION REGARDING APPROPRIATE GUIDELINES RANGE AND SENTENCES IN COMPARABLE CASES

*Attorneys for Defendant*:

KARLOFF C. COMMISSIONG, ESQ.
405 Lexington Avenue, 9th Floor
New York, New York 10174

CHRISTINE DELINCE, ESQ.
100 Church Street, 8th Floor
New York, New York 10007

EMILEE SAHLI, ESQ.
195 Broadway, 4th Floor
Brooklyn, New York 11211

March 10, 2025

**TO BE FILED VIA E.C.F.**

Hon. Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:    <u>United States</u> v. <u>Cholo Abdi Abdullah</u>, Docket. No. 20 Cr. 677 (AT)

Dear Judge Torres:

This letter is submitted at the direction of the Court, which has ordered standby counsel to provide analysis of (1) the appropriate Guidelines range to be used and (2) the sentences that have been imposed in comparable cases.  <u>See</u> Court Order dated March 4, 2025, at ECF 164.[1]

**I.    Introduction**

On December 10, 2020, the government filed an indictment, charging Mr. Abdullah with the following: Count 1 - Conspiracy to Provide Material Support to a Foreign Terrorist Organization, 18 U.S.C. §2339B(a)(1), (d)(1)(C), (E), and (F), and 3238; Count 2 - Providing Material Support to a Foreign Terrorist Organization 18 U.S.C. §2339B(a)(1), (d)(1)(C), (E), and (F), and 3238, and 2; Count 3: Conspiracy to Murder U.S. Nationals 18 U.S.C. § 2332(b) and 3238; Count 4 - Conspiracy to Commit Aircraft Piracy 49 U.S.C. §46502 and 18 U.S.C. §3238; Count 5 - Conspiracy to Destroy Aircraft 18 U.S.C. §§32(a)(8) and 3238; and Count 6 - Conspiracy to Commit Acts of Terrorism Transcending National Boundaries 18 U.S.C. §§2332b(a)(2) and 3238.  Mr. Abdullah was arrested in the Philippines and brought to the United

---

[1] This Court granted Mr. Abdullah's application to proceed <u>pro se</u>, and in so doing, directed counsels' participation as standby counsel.  <u>See</u> E.C.F. entry dated 11/21/2023.  In accordance with the exercise of Mr. Abdullah's right to proceed <u>pro se</u>, he has not authorized standby counsel to file this letter or express any views with respect to the application of the Sentencing Guidelines and/or any other factors related to his sentencing.

2

States on December 15, 2020. He appeared in the Southern District of New York on December 16, 2020, and has been detained at the Metropolitan Detention Center ("MDC Brooklyn") ever since.

On October 28, 2024, Mr. Abdullah, acting pro se proceeded to trial on all six counts in the indictment. After a 1-week trial, Mr. Abdullah was convicted of all six counts. The Court scheduled sentencing for March 10, 2025.[2] Based on information provided in trial transcripts, as well as by the government, the United States Department of Probation ("Probation") drafted a Pre-sentence report ("P.S.R."). Mr. Abdullah did not participate in a Pre-sentence interview ("P.S.I."). As a result, Probation was unable to provide any essential information with respect to Mr. Abdullah, in the following sections of the P.S.R.: (1) Personal and Family Data, (2) Physical Condition, (3) Mental and Emotional Health, (4) Substance Use Disorder, (5) Educational, Vocational and Special Skills, and (6) Employment Record. As the Court is aware, the absence of such information is critical, as the above categories are essential factors that the Court is mandated to consider in arriving at a sentence that is sufficient but not greater than necessary to reach the sentencing goals of Congress as set forth in 18 U.S.C. §3553(a). See also 18 U.S.C. §3661. In the absence of such information, pro se litigants must be held to a less stringent standard than attorneys. See Santiago v. United States, 187 F.Supp. 3d, 387 (SDNY) (May 13, 2016); see also McPherson v. Coombe, 174 F.3d 276 (2d Cir. 1999).

II.    **Guidelines Calculation and Analysis**

Based on a review of the P.S.R., standby counsel has no reason to believe that Probation has incorrectly calculated the Guidelines applicable to Mr. Abdullah. Because Mr. Abdullah was convicted of multiple offenses, Probation performed a multiple-count analysis, pursuant to

---

[2] Pursuant to the Court's March 4, 2025, Order, sentencing was adjourned to March 24, 2025.

U.S.S.G. §3D1.1(a). Counts 1 through 6 were grouped because they involved the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan. See U.S.S.G. §3D1.2(b). Because the highest offense level was produced by Count 4, Conspiracy to Commit Aircraft Piracy, Probation utilized U.S.S.G. §2A5.1. See U.S.S.G. §3D1.3(a). As a result, the base offense level calculated by Probation was 38. See U.S.S.G. §2A5.1.

Probation included two victim-related adjustments. The first, resulting in a 12-level increase of the base offense level, was added because the offense was a felony that involved, or was intended to promote, a federal crime of terrorism. See U.S.S.G. §3A1.4(a). Probation also included a 3-level victim-related adjustment, if the Court at sentencing determines beyond a reasonable doubt that the defendant intentionally selected any victim or any property as the object of the offense of conviction because of the actual or perceived race, color, religion, national origin, ethnicity, gender, disability, or sexual orientation of any person. See U.S.S.G. §3A1.1(a). Probation did not include a 3-level downward adjustment for acceptance of responsibility. See P.S.R. at ¶56. The total offense level as calculated by Probation was 53. However, where the total offense level is calculated in excess of 43 – the maximum offense level set forth in the Sentencing table – the offense level will be treated as a level 43. A total offense level of 43 resulted in a Guidelines range of Life imprisonment regardless of Mr. Abdullah's Criminal History Category. Standby counsel has no reason to believe that Probation has incorrectly calculated Mr. Abdullah's offense level.

Probation assigned Mr. Abdullah a criminal history score of zero, which placed Mr. Abdullah in Criminal History Category I. However, where the offense involved a federal crime of terrorism, the Criminal History Category is VI. See U.S.S.G. §3A1.4(b). Standby counsel has

4

no reason to believe that Probation has incorrectly calculated Mr. Abdullah's Criminal History Category.

As a result, standby counsel has no reason to believe that Probation incorrectly calculated Mr. Abdullah's Guidelines range of Life imprisonment.

### III.    Sentences Imposed in Comparable Cases

The Court has directed standby counsel to provide an analysis of the sentences that have been imposed in comparable cases. Probation has addressed this issue in the P.S.R. which stated: "During the last five fiscal years (FY2019-2023), there was an insufficient number of defendants (1) whose primary guideline was §2A5.1, with a Final Offense Level of 43 and a Criminal History Category of VI, after excluding defendants who received a §5K1.1 substantial assistance departure; and (2) who received a sentence of imprisonment in whole or in part." See P.S.R. at p. 21 (Judiciary Sentencing Information (JSIN)). Based on a review of multiple cases from federal district courts[3], standby counsel has not found any cases, in which defendants had a comparable combination of charges and comparable roles with respect to: 1) the defendant's position in the terrorist organization and 2) role in the charged conspiracy or uncharged conspiracy discussed at trial. In their sentencing submission dated March 3, 2025, the government provided the Court with several cases in which the Court sentenced the defendant to Life imprisonment. However, in an effort to provide a comprehensive response to the Court's request, we have selected the following cases for the Court's review:

---

[3] Districts include the Southern District of Florida, Eastern District of New York, and the Eastern District of Virginia.

<u>United States v. Saado Mohamed Ibrahim</u>, 96 Cr. 660, (AJ) (SD-FL)

Ibrahim was convicted of aircraft piracy related to an incident on July 26, 1996. Specifically, he was indicted for forcing his way into the cockpit of Iberia Flight 6621 enroute from Madrid to Havana on July 26, 1996, and threatening to blow it up. The aircraft carrying 231 passengers and crew landed in Miami and Ibrahim surrendered peacefully not long after the aircraft touched down. Ibrahim was convicted after trial on April 25, 1997. On August 25, 1997, he was sentenced to 240 months imprisonment.

<u>United States v. Muhanad Mahmoud Al Farekh</u>, 15 Cr. 268 (BMC) (ED-NY)

Al Farekh was charged with joining al Qaeda and conspiring to kill Americans, including assisting with building an explosive device that was used to attack a U.S. military installation in Afghanistan in 2009 which led to several serious injuries. On September 29, 2017, he was convicted after trial, of conspiracy to murder United States nationals, conspiracy to provide material support to a foreign terrorist organization and terrorists, and several weapons charges including the use of explosives, conspiracy to use a weapon of mass destruction, and conspiracy to bomb a government facility. On March 13, 2018, he was sentenced to 45 years imprisonment.

<u>United States v. Ahmed Omar Abu Ali</u>, 5 Cr. 53 (RDA) (ED-VA)

Ali was charged with conspiring and providing material support to a federal terrorist organization, conspiracy to assassinate the President of the United States, conspiracy to commit aircraft piracy and to destroy aircraft, and contributing and receiving funds from Al Qaeda. On November 22, 2005, Ali was convicted after trial of planning to conduct terrorist operations, including a 9/11 style attack on the United States, and establishing an al Qaeda cell in the United States, as well as conspiring to assassinate the President of the United States. On March 29, 2006, he was sentenced to 360 months imprisonment.

The cases cited above, combined with the cases in the government's submission, offer the Court a comprehensive view of the types of sentences imposed in cases that share one or more charges with this matter. However, based upon a review of those cases, those courts had information about several 3553(a) factors, which are unavailable in this instance. As a result, great caution must be exercised in using any of the above sentences imposed, for comparative purposes. The pro se litigant is entitled to the favorable exercise of the Court's discretion. See Haines v. Kerner, 404 U.S. 519 (1972).

### IV. History and Characteristics of the Defendant

The District court is mandated to consider information related to the defendant's background, history and characteristics under 3553(a) when imposing a sentence. See United States v. Booker, 543 U.S. 220 (2005). The federal sentencing guidelines are now advisory. See Kimbrough v. United States, 552 U.S. 85 (2007). As explained in Gall v. United States, 552 U.S. 38 (2007), district courts must treat the guidelines as the, "starting point and the initial benchmark[.]" See also Rita v. United States, 551 U.S. 338, (2007). In the ordinary case, the Supreme Court has recognized that the Commission's recommendation of a sentencing range will, "reflect a rough approximation of sentences that might achieve §3553(a)'s objectives." Id. at 350. The district court, on the other hand, has, "greater familiarity with … the individual case and the individual defendant before him than the Commission or the appeals court." Id. at 357, 358. Therefore, the district court is, "in a superior position to find facts and judge their import under §3553(a)" in each particular case. Supra Gall at 51 (internal quotation marks omitted). However, in this case, the factors available to the district court with respect to Mr. Abdullah's background, history and characteristics are severely limited.

Based upon the information in the public record, Mr. Abdullah is a 34-year-old male who is a Kenyan citizen. Since Mr. Abdullah did not participate in a P.S.I, very few facts beyond his age and place of birth are available to the Court. As a result, the Court is without essential information regarding Mr. Abdullah's history and characteristics. Indeed, the P.S.R. is bereft of any information, related to these factors to assist the Court in its sentencing analysis. With the exception of a brief call on March 7, 2025, that disconnected shortly after the call began, Mr. Abdullah has refused to speak with standby counsel since November 2024. Additionally, throughout the course of our relationship with Mr. Abdullah, he has not disclosed any information regarding his background, family and personal history. As a result, standby counsel is not in possession of any of the essential information regarding Mr. Abdullah's history and characteristics to be considered by the Court to assist in the Court's sentencing analysis.

V. **Conclusion**

As stated above, Mr. Abdullah has been granted his request to proceed pro se. Notwithstanding the fact that the Court has granted Mr. Abdullah the right to represent himself, the Court has nevertheless directed standby counsel to provide analysis of (1) the appropriate Guidelines range to be used and (2) the sentences that have been imposed in comparable cases. Standby counsel has responded to the Court's direction, while attempting not to violate Mr. Abdullah's Sixth Amendment Right to represent himself.[4] To ensure that Mr. Abdullah is fully informed at the time of sentencing, a copy of the Court's March 4, 2025, Order, along with this letter will be provided to him.

Respectfully,

/s/

Karloff C. Commissiong
Christine Delince
Emilee Sahli

cc:   A.U.S.A. Nicholas Bradley (Via Electronic Mail and E.C.F.)
      A.U.S.A. Jonathan Bodansky (Via Electronic Mail and E.C.F.)

---

[4] However, standby counsel is of the view that the Court's direction is comparable to the views of standby counsel being "thrust" upon an unwilling defendant. And if those views are considered in connection with sentencing, violates his right to self-representation as cautioned by the United States Supreme Court. See Faretta v. California, 422 U.S. 806, 820 (1975).